*New-London,*
July, 1843.

Williams
*v.*
Denison.

WILLIAMS *against* DENISON.

On a complaint of usury, filed by the defendant, under the 3d section of the statute, the defendant himself cannot be examined to prove the facts alleged in such complaint.

THIS was an action brought by the indorsee against the indorser of a promissory note ; tried at *Norwich, March* term, 1843, before *Hinman*, J.

The defendant had filed his complaint, on the second day of the session of the court, pursuant to the statute against usury, alleging that the note on which the suit was founded, was given on a usurious consideration. On the trial, the plaintiff was examined upon oath as to the truth of this allegation ; and upon such examination, he denied its truth. The defendant thereupon offered himself as a witness to prove it ; to whose testimony the plaintiff objected. The court sustained the objection, and refused to permit the defendant to testify in the cause.

To prove the facts stated in the complaint, the defendant also offered in evidence the deposition of *Charles H. Miller*, one of the makers of the note indorsed by the defendant. To the admission of this deposition the plaintiff objected, on the ground that the defendant had indorsed the note for the benefit and accommodation of the makers, and if he should be subjected in this suit, he would be entitled to recover from them not only the amount of the judgment in this suit, but also the costs and expenses of defending it. The court sustained the objection, and rejected the deposition.

The plaintiff obtained a verdict in his favour ; and thereupon the defendant moved for a new trial, for error in the decisions of the court.

*Brainard* and *Foster*, in support of the motion, contended, 1. That under our present statute, the defendant was a competent witness in support of his complaint. This proceeding is founded on the statute, and is to be governed by it. The statute provides, that on the defendant's filing his complaint of usury, " The court shall proceed to enquire into the truth of such complaint, as a court of equity, and may examine the *parties* on oath." *Stat.* 651. *tit.* 115. *c.* 1. *s.* 3. (ed. 1838.)

The statute then provides, that if the *plaintiff* shall refuse to be examined on oath, he shall become non-suit ; but, for an obvious reason, no correspondent provision regarding the defendant, was necessary ; and the general provision as to " the parties," is left without addition or qualification. The statute is a *remedial* one, intended to *enlarge* the rights of the parties ; and is therefore to be *liberally* expounded, so as to advance the remedy. But aside from this familiar rule, it is not easy to see how the term "*parties*," can be satisfied, by confining its application to the plaintiff. Are " the parties" one party only ? Is not the defendant a party as well as the plaintiff ? Suppose the party plaintiff is dead ; can there be no examination in that case ? The legislature obviously meant to provide for a case wherein common law proof cannot be had, and to allow the *parties*—one as well as the other—to be examined.

The cases of *Fliming* v. *Bates*, 1 *Root* 129. *Livingston* v. *Bird, Id.* 255. and *Payne* v. *Payne, Id.* 367. will be relied upon *e contra.* But, in the first place, those decisions were made by the superior court ; and it is only by revising the decisions of that court, that this court answers the end of its being. Secondly, since those decisions were made, the law on this subject has been revised by the *legislature ;* and this body, knowing that the courts had been in the habit of allowing only one party to be examined, now say, that the *parties* may be examined. If it had been the direct and exclusive object of the legislature to change the practice, what more explicit language could they have used ? Besides, the statute was altered, at the revision of 1821, in other particulars, shewing an intention to take up this subject, and legislate upon it anew. Compare the old statute, *tit.* 170. *s.* 9. *p.* 679. *ed.* 1808. with the revised act, *tit.* 115. *c.* 1. *s.* 3. *p.* 651. ed. 1838.

2. That the deposition of *Miller* should have been received. [This point was afterwards waived.]

*Pomeroy*, contra, was stopped by the court.

Hinman, J. The question arising on the rejection of the deposition of *Charles H. Miller*, one of the makers of the note, for whose accommodation the defendant indorsed it,

New-London,
July, 1843.

Williams,
*v.*
Denison.

*New-London,*
July, 1843.

Williams
*v.*
Denison.

being abandoned; the only remaining question is, whether the statute, entitled "An Act to restrain the taking of usury," makes the defendant, in an action upon a bond or other security, where a complaint and application pursuant to said statute is filed therein, a competent witness, to prove the facts in the complaint and application alleged.

The 3d section of the statute *p.* 651, (ed. 1838,) is in these words: "And in any action brought on any bond, bill or mortgage, or any contract whatever, it shall be lawful for the defendant to inform the court before which the action is pending, by filing his complaint with the clerk, on the second day of the session of the court, that such contract was given on a usurious consideration; and in that case, the court shall proceed to enquire into the truth of such complaint, as a court of equity, and may examine the parties on oath, and may receive any other proper testimony, &c."

This provision was first enacted in 1734; and will be found in every revision of the statutes since that time; the phraseology only being slightly altered, at the revision in 1821; the language used in the old statute, in the latter part of the above quotation, being, " and then, in such case, the court is directed and impowered to proceed, in searching out the truth of such complaint, as a court of chancery or equity, by examining the parties upon oath, or in any other way proper to a court of equity." It has not been very strenuously contended, that this alteration requires any different construction to be put upon the existing statute, from that which we should put on the statute as it formerly stood; and it surely could not be, successfully, so contended. The revisors of 1821, doubtless intended to condense the language of the old law; but they were men, well acquainted with the construction the courts had put upon it; and had it been intended to alter its meaning, language would have been used, which was free from doubt: besides, it is expressly provided in a separate act, passed at the same session with the revision, that " such of the said revised laws as remain substantially the same as before the revision, shall be considered as having continued in force, from the time they were first enacted, any circumstantial amendments or variations in phraseology, arrangement and connexion, notwithstanding. *Ed.* 1838. *p.* 664.

*New-London,*
July, 1843.

Williams
*v.*
Denison.

In 1789, this question was raised and decided, in the case of *Fliming*, executor of *McDonald* v. *Bates*, 1 *Root* 129; and it was then held by the superior court, and the decision was afterwards affirmed, in the court of errors, that a defendant can not be admitted a witness in such a case; and the court say, that " admitting the defendant a witness to substantiate his own defence, is contrary to the rules of proceeding in chancery; would endanger all written securities; and tend to defeat the guards, provided by law, against frauds and perjuries." And the same principle was again recognized, in the case of *Livingston* v. *Bird*, 1 *Root* 255; since which time, the practice is believed to have been uniform, and in conformity with the principle recognized in these decisions.

But it is insisted, that these decisions are contrary to the letter of the statute, and ought to be disregarded and overruled, by this court. If we felt at liberty to review a course of decisions, one of them made by the highest court in the state, and sanctioned, as these are, by a practice of more than half a century, it is by no means sure, that we should not come to the same result, and for the reasons given in the case of *Fliming*, exr. v. *Bates*. But a revision of this question is not open to us. A contemporaneous construction has been given to an ancient statute; and that construction is sanctioned by a practice, running back beyond the recollection of our oldest practicing lawyers. To reverse a decision thus made and sanctioned, would be to assume a prerogative which belongs to the legislature alone. The law on too many subjects is uncertain enough, without adding to its uncertainty, by the frequent reversal of the solemn decisions of our highest courts. In the language of an eminent judge, " the decisions of our predecessors, the judges of former times, ought to be followed and adopted, unless we can see very clearly, that they are erroneous; for otherwise, there will be no certainty in the administration of the law."

We therefore advise the superior court, that no new trial be granted.

In this opinion the other Judges concurred.

New trial not to be granted.